UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MAURICE POCHE KIRK,

                    Plaintiff,                    Case No. 1:20-cv-1049

v.                                                Honorable Robert J. Jonker

UNKNOWN GAUTHIER et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.
Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the
Court is required to dismiss any prisoner action brought under federal law if the complaint is
frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary
relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.
§ 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,
404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly
irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these
standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections
(MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan.
The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF)

in Manistee, Manistee County, Michigan.  Plaintiff sues ECF Food Service Director Unknown Gauthier and food service staff members Unknown Monroe, Unknown Landis, and Unknown Elkins.[1]

In his amended complaint,[2] Plaintiff alleges that, on May 21, 2019, during his second-shift detail in the food-service department, the kitchen ran out of the all-purpose dish soap used in the dish-tank area for washing pots and pans.  Defendant Monroe unlocked the caustic chemical closet and cage, allowing a prisoner to retrieve a five-gallon bucket of highly concentrated automatic dishwashing detergent, designed to be used in the dishwasher.  Defendant Monroe poured some of the chemical into an unmarked bucket and gave it to Plaintiff.

After working with the caustic detergent for 30 minutes, Plaintiff felt his hands stinging and burning.  When he pulled off his gloves, he could see that his hands and cuticles were burned, his nails were thinned, and his skin was peeling.[3]  He reported his injuries to Defendant

---

[1] In his original complaint, Plaintiff sued 15 individual ECF officials working in the food-service and healthcare units, including the presently named Defendants, as well as Defendants Trinity Food Service Co. and Corizon Health Care.  Plaintiff's original 43-page complaint was substantially illegible, conclusory, repetitive, and did not otherwise conform to the requirements of the form complaint under 42 U.S.C. § 1983 for a civil action by a person in state custody.  In an order issued on May 6, 2021 (ECF No. 10), the Court directed Plaintiff to file an amended complaint on the form, with further instructions on content, legibility, and length.  Plaintiff timely filed his amended complaint, in which he named only the four Defendants listed in this opinion.  The amended complaint meets the requirements set forth in the Court's May 6, 2021, order.  As Plaintiff was informed in the order, the amended complaint takes the place of the original complaint.  As a result, the Defendants not named in the amended complaint have been terminated from this action.

[2] Plaintiff has filed a motion to add exhibits to his complaint (ECF No. 7).  The exhibits include copies of the following documents:  his May 24, 2019, Step-I grievance (ECF No. 7-1, PageID.108); MDOC Policy Directive 03.03.130 (eff. Oct. 1, 2019) (ECF No. 7-2, PageID.109–111); his June 18, 2019, misconduct hearing report for disobeying a direct order (ECF Nos. 7-3, PageID.112); nurses notes from his May 21, 2019, visit (ECF No. 7-4, PageID.113–115); and his November 13, 2019, security classification screening report and reclassification notice (ECF Nos. 7-5–7-6, PageID.116–117).  Upon review, the Court will grant the motion.  The Court will consider the supplements as filed with the complaint and retained for the amended complaint.

[3] Notwithstanding Plaintiff's description of the seriousness of the burns in the amended complaint, the supplemental attachments to Plaintiff's complaint indicate that Plaintiff had "mild redness to [both] hands.  No blistering or slo[u]ghing of skin noted."  (Nursing notes, ECF No. 7-4, PageID.114.)

Monroe, who sent him to health services. He was treated in health services for his burns, given a cream to apply, and laid-in from work until the skin problem resolved.

Plaintiff filed a grievance that same day. On May 30, 2019, Defendant Gauthier reviewed the grievance with Plaintiff. Gauthier apologized for the incident, advised that it would not happen again, and accepted responsibility for the negligence of his staff. Plaintiff asked that staff members be disciplined, and he told Defendant Gauthier that Gauthier needed to ensure that the kitchen was stocked with the correct soap. Gauthier agreed that his staff had not been properly trained to work with the chemical. Plaintiff alleges that Gauthier stated the following in his Step-I grievance response:

> "Food Service did switch over to a new chemical . . . the inmate did see health care . . . the chemical that this inmate is talking about was not labeled right . . . when my staff found this out they made the right adjustments on the spot . . . my staff has now been trained in the proper way to handle chemicals . . . [.]"

(Am. Compl., ECF No. 11, PageID.130.)

Seventeen days later, on June 17, 2019, the all-purpose soap again ran out. When Defendant Gauthier was asked for more soap, he stated that there was none and told employees to use the same red detergent that had caused Plaintiff's injury on May 21, 2019. When Plaintiff sought to remind Defendant Gauthier of their earlier conversation, Gauthier laughed at Plaintiff and told him to either use the chemical or remove his kitchen uniform. Plaintiff continued to explain that use of the detergent was hazardous, and Gauthier yelled at Plaintiff to remove his uniform and leave the kitchen. Plaintiff returned to his unit and wrote a second grievance against Defendant Gauthier.

When he reported for work the next day, Plaintiff informed Defendant Landis that he needed to be removed from his job assignment because of his prior injuries. Landis responded

3

that there was nothing he could do, and he asked whether Plaintiff was going to work. Plaintiff asked to see a commanding officer. The kitchen officer called Lieutenant Baker (not a defendant). Baker advised Plaintiff that there was nothing he could do. Baker told Plaintiff that the only way Plaintiff could get removed from the kitchen was to accept a misconduct ticket for disobeying a direct order when he refused to work. Plaintiff explained, however, that he was not refusing to work; he was just refusing to work under the same conditions that caused him injury. Lt. Baker then instructed Defendant Landis to order Plaintiff to work. Plaintiff left the kitchen. Defendant Landis wrote a misconduct ticket, as well as a request that Plaintiff be terminated from his food-service position. Plaintiff signed off on the misconduct charge, waiving a hearing. (ECF No. 7-3, PageID.112.) Plaintiff subsequently was terminated from his job.

Four months later, on October 17, 2019, Plaintiff reported to work in food service for his new work detail. Food-service staff members asked Plaintiff why he was there, stating that it was a conflict of interest for Plaintiff to work in the unit, given his prior and ongoing complaints about Gauthier and other staff. A staff member called the control center, which directed the concern to Defendant Gauthier. When Gauthier saw Plaintiff, he asked why Plaintiff was there, indicating that the classification director should never have sent Plaintiff back to the kitchen. Gauthier told Plaintiff to leave, as he was being laid in for the day. The following day, Plaintiff received another detail to report to the kitchen. When Plaintiff arrived, Defendant Gauthier asked what the classification director said. Plaintiff responded that he was to report to work.

On November 2, 2019, Plaintiff approached Lt. Clifford (not a defendant) to advise Clifford what had happened between himself and Defendant Landis. Plaintiff told Clifford that

Defendant Landis had tried to provoke him by forcing him to perform an unhealthy and dangerous task.

Plaintiff seeks compensatory and punitive damages for the injuries to his hands caused by exposure to the caustic detergent. He also seeks damages for potential injuries to his lungs resulting from the inhalation of fumes from the product, which he bases on the product warnings.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III. Lack of Allegations

Although Plaintiff names Defendant Elkins in the list of Defendants, he fails to make any factual allegations against Defendant Elkins. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x

6

762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at \*2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at \*1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Plaintiff fails to even mention Defendant Elkins in the body of his complaint. His allegations against Elkins therefore fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

## IV. Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for

prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The reason for focusing on a defendant's mental attitude is to isolate those defendants who inflict punishment. *Farmer*, 511 U.S. at 839. The deliberate indifference standard "describes a state of mind more blameworthy than negligence." *Id.* at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety"). As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer*, 511 U.S. at 837–38 (citations omitted). Thus, accidents, mistakes, and other types of negligence are not constitutional violations merely because the victim is a prisoner. *Acord v. Brown*, No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Rather, what is required is a conscious disregard of a substantial risk of harm. *Farmer*, 511 U.S. at 839.

Plaintiff's claims concerns workplace safety. The Sixth Circuit has provided no published instruction as to when and how hazardous prison working conditions may state a plausible claim under the Eighth Amendment. However, in *Phaneuf v. Collins*, 509 F. App'x 427, 432 (6th Cir. 2012), the court discussed the standard at some length, holding that "deliberate indifference is akin to criminal recklessness—that is, *knowingly* taking an unjustifiably high risk of causing serious harm." *Id.* at 432 (emphasis in original) (citing *Farmer*, 511 U.S. at 836). The court reasoned that "[o]nly an act committed with this mental state can adequately 'evince

9

deliberateness tantamount to intent to punish.'" *Id.* at 431 (quoting *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (internal quotation marks and citations omitted)). Emphasizing the significance of such "quasi-penal intent," *id.* at 433, the court held that the defendant was not deliberately indifferent in activating a press without ensuring that the victim's hands were not in the way.

Other circuits have recognized that the Eighth Amendment is implicated when prisoners are forced to perform physical labor in known, sufficiently hazardous conditions. *See Rhodes v. Michigan*, No. 2:17-CV-12416, 2020 WL 978296, at *8 (E.D. Mich. Feb. 28, 2020) (citing, *inter alia*, *Morgan v. Morgenson*, 465 F.3d 1041, 1045 (9th Cir. 2006)); *Rayburn v. Blue*, 154 F. Supp. 3d 523, 532 (W.D. Ky. 2015) (discussing *Howard v. King*, 707 F.2d 215, 219 (5th Cir. 1983)); *Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1991)). In *Bibbs*, the Eighth Circuit held that, although "the intentional placing of prisoners in dangerous surroundings or the manifestation of deliberate indifference to their safety violates the Eighth Amendment," a supervisor's decision to assign a prisoner to a machine on which the protective guards covering the gears had been removed sounded in negligence only. *Bibbs*, 943 F.2d at 27; *see also Johnson v. Campbell*, 25 F. App'x 287, 288 (6th Cir. 2001) (failure to train prisoner in on use of equipment at recycling center sounded in negligence, not deliberate indifference); *Smiley v. Tennessee*, No. 1:16-CV-469, 2017 WL 3975001, at *14–16 (E.D. Tenn. Sept. 8, 2017) (allegations insufficient to demonstrate that defendants' alleged failures to protect from airborne dust particulates amounted to deliberate indifference); *Lee v. Sikes*, 870 F. Supp. 1096, 1099 (S.D. Ga. 1994) (applying Eighth Amendment to workplace safety); *Arnold v. South Carolina Dep't of Corr.*, 843 F. Supp. 110, 113 (D.S.C. 1994) (indicating that it is questionable whether the Eighth Amendment applies to work-related prison injuries). To show deliberate indifference in the context of

workplace safety, prisoners must show that their captors have "knowingly compel[led them] to perform physical labor which is beyond their strength, or which constitutes a danger to their lives or health, or which is unduly painful." *Ray v. Mabry*, 556 F.2d 882, 882 (8th Cir. 1977); *see also Morgan*, 465 F.3d at 1045 (same).

The types of factual circumstances which are insufficient to show deliberate indifference are illustrated by the Eighth Circuit's decision in *Warren v. Missouri*, 995 F.2d 130 (8th Cir. 1993), and by the District of South Carolina's decision in *Arnold*, 843 F. Supp. 110. In *Warren*, an inmate was injured when a board "kicked back" from a table saw that he was operating at the furniture factory at the state penitentiary. 995 F.2d at 130. The inmate alleged that the defendants were deliberately indifferent in failing to equip the saw with an anti-kickback feature despite knowledge of prior injuries. The district court granted defendants' motion for summary judgment, and the Eighth Circuit affirmed. *Id.* at 130–31. Defendants introduced evidence that there had been twenty-nine table saw injuries in the five years preceding the inmate's injury, as well as efforts to correct the working condition of the saws when the injuries occurred; the plaintiff introduced evidence that there had been twenty-one prior injuries. *Id.* at 131. Based on this evidence, the Eighth Circuit found that there was no genuine issue of deliberate indifference to a serious issue of workplace safety. *Id.* at 131.

In *Arnold*, an inmate working in the prison kitchen was burned by a twenty-five-gallon pot that tipped downward. 843 F. Supp. at 111. The inmate alleged that the kitchen supervisor had been informed that the pot was faulty, and the supervisor had replied that they did not have time to fix it. *Id.* at 113. The district court held that there was no evidence that defendants possessed the requisite culpability by failing to repair the pot, and, at best, the inmate had offered evidence which showed only negligence. *Id.*; *see also Stephens v. Johnson*, 83 F.3d 198, 201

(8th Cir. 1996) (even assuming that the administrator was aware of safety problems at the warehouse, such a showing falls short of creating a genuine issue of deliberate indifference to workplace safety). *See also Berry*, 556 f2d

A. **May 21, 2019, incident**

Plaintiff complains that Defendant Monroe distributed, and Gauthier permitted distribution of, a caustic machine dishwashing liquid that burned Plaintiff's hands on May 21, 2019.

Even assuming that Plaintiff's allegations are sufficient to meet the objective prong of the deliberate-indifference standard, Plaintiff utterly fails to allege that either Monroe or Gauthier were aware that the cleaner, at the concentration used, posed a substantial risk of serious harm to individuals using it for hand-dishwashing purposes. Although Plaintiff makes the conclusory allegation that Defendant Gauthier "knowingly and intentionally neglect[ed] to inform [him] there was a chemical change" (Am. Compl., ECF No. 11, PageID.128), the facts Plaintiff alleges support a conclusion that staff were merely negligent in distributing the new detergent and that Defendant Gauthier was negligent in failing to train staff on the use of such chemicals. *See Arnold*, 843 F. Supp. at 113 (despite use of phrase "deliberate indifference" in his pleadings, inmate failed to show that defendants possessed the requisite mental state). Indeed, Plaintiff elsewhere describes staff conduct as negligent. (Am. Compl., ECF No. 11, PageID.129.) As discussed, allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Plaintiff therefore fails to state an Eighth Amendment claim arising out of the May 21, 2019, exposure to the chemical. Because Plaintiff makes no other allegation against Defendant Monroe, Monroe will be dismissed from the action.

### B. June 17, 2019, incident

Plaintiff alleges that, on June 17, 2019, Defendant Gauthier told him to use the same highly concentrated, hazardous chemical to wash the pots and pans, despite knowing that Plaintiff's hands had suffered chemical burns on May 21, 2019. When Plaintiff refused Landis' direct order requiring him to go to work and use the allegedly harmful detergent, Landis wrote a misconduct charge against Plaintiff and recommended that Plaintiff be dismissed from his job.[4]

Plaintiff's allegations fall short of demonstrating that either Landis or Gauthier was deliberately indifferent to a significant risk of serious harm. First, notwithstanding Plaintiff's hyperbolic language about the terrible burns he suffered on May 21, the risk to Plaintiff was limited: it admittedly occurred at the concentration used on May 21, when the detergent got under his gloves, and after exposure for 30 minutes. Even then, Plaintiff suffered superficial chemical burns to his hands. (*See* Nursing Notes, ECF No. 7-4, PageID.114.)

Given that Plaintiff acknowledges that staff were trained after his initial injury and given that he makes no allegations that, on June 17, Defendants intended to expose him to the chemical at the same concentration as the exposure on May 21, Plaintiff's allegations fall short of demonstrating that Defendants' instructions to use the detergent would have placed him at substantial risk of serious harm. *Farmer*, 511 U.S. at 834. And, while Plaintiff indicates that the deep sinks allowed water to come over his gloves, he utterly fails to explain why he could not have kept the water level lower or taken more care when washing pots and pans, especially since he was aware of the potential for skin irritation. His allegations therefore fall short of meeting the

---

[4] Because he refused to perform his job, Plaintiff was not actually exposed to a substantial risk of serious harm from the chemical on June 17, 2019. For purposes of this opinion, the Court assumes without deciding that removing Plaintiff from his job for refusing to use the chemical cleaner is the equivalent of "knowingly compel[ling him] to perform physical labor which . . . constitutes a danger to their lives or health, or which is unduly painful." *Ray*, 556 F.2d at 882.

objective prong of the Eighth Amendment standard, because they fail to show that using the detergent placed Plaintiff at a substantial risk of serious harm.

Moreover, Plaintiff's attachment of the product label (ECF No. 1-2, PageID.51), with its warnings, does not demonstrate that any use of the product would have exposed him to danger to his skin or through inhalation. As with many cleaning products, including ordinary bleach, the product warned of the dangers to the skin of the concentrated product and recommended the wearing of personal protective equipment. It also warned of breathing the concentrated product and advised that the product be used in a ventilated area. But the product nonetheless was designed to wash food soils—albeit in a machine. The use in a machine unquestionably would have raised the same concerns about inhalation as the use in a sink. Yet Plaintiff wholly fails to allege that he kitchen area was insufficiently ventilated for the proper use of the chemical at its proper concentration. He therefore fails to allege facts demonstrating that he was at an objectively substantial risk of serious harm from breathing the chemical. Indeed, he does not allege that he suffered a lung injury from his first exposure.

Under these circumstances, Plaintiff's contention that Defendants Landis and Gauthier, by ordering him to use the product, were aware of or demonstrated deliberate indifference to a substantial risk of serious harm to Plaintiff fails to state a claim. Plaintiff's Eighth Amendment claim therefore will be dismissed.

## Conclusion

The Court grants Plaintiff's motion to supplement his exhibits (ECF No. 7). Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v.*

*Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:    July 8, 2021           /s/ Robert J. Jonker                           
                                             ROBERT J. JONKER
                                             CHIEF UNITED STATES DISTRICT JUDGE